Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only



FILED
CLERK, U.S. DISTRICT COURT

OCT 1 7 2001

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GENSCI ORTHOBIOLOGICS;

     Plaintiffs/
     Counterclaim
     defendant,

GENSCI REGENERATION SCIENCES,

     Defendant.

        v.

OSTEOTECH, Inc.,

     Plaintiff/Counterclaim
     plaintiff/Defendant.

CASE No. CV 99-10111 MRP

MEMORANDUM OF DECISION RE:

Motions in Limine;

Osteotech's Motion for
Summary Judgment

GenSci's Motion to
Declassify Documents;

## INTRODUCTION

In late August and early September of 2001, Osteotech, Inc. ("Osteotech") individually, and GenSci Orthobiolgics, Inc. and GenSci Regeneration Sciences, Inc. together (collectively "GenSci"), filed a total of over twenty motions in limine in this Court in connection with the infringement action involving Osteotech's Patents Nos. 5,290,558 ("the '558 patent") and 5,284,655 ("the '655 patent"). The parties also filed a renewed motion for summary judgment that the reverse doctrine of equivalents does not apply, an objection to the renewed motion, a motion to declassify documents, and a motion for claim construction. The matters came before the Court on October 1, 2001 for oral argument and were taken under submission.

OCT 18 2001

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . 1

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . 2

I. OSTEOTECH'S MOTIONS IN LIMINE . . . . . . . . . . . . . . 4

    1.  Osteotech's Motion in Limine to Exclude Opinions of
       Counsel at Trial (Osteotech's Motion in Limine No. 1) . 4

    2.  Osteotech's Motion in Limine to Exclude Evidence of the
       MTF Patent (Osteotech's Motion in Limine No. 2) . . . . . 5

    3.  Osteotech's Motion in Limine to Exclude Testimony of Luke
       Vaughan (Osteotech's Motion in Limine No. 3) . . . . . . 6

    4.  Osteotech's Motion in Limine to Exclude Inventor Testimony
       Regarding the Scope and Principle of the Invention, Claim
       Construction and § 112 Defenses (Osteotech's Motion in
       Limine No. 4) . . . . . . . . . . . . . . . . . . . . . 8

    5.  Osteotech's Motion in Limine to Exclude Evidence
       Concerning Abandoned or Unraised Claims or Defenses
       (Osteotech's Motion in Limine No. 5) . . . . . . . . . . 10

    6.  Osteotech's Motion in Limine to Preclude Untimely
       Expert Reports and Testimony (Osteotech's Motion in
       Limine No. 6) . . . . . . . . . . . . . . . . . . . . 13

    7.  Osteotech's Motion in Limine to Exclude Previously
       Undisclosed Witnesses (Osteotech's Motion in Limine
       No. 7) . . . . . . . . . . . . . . . . . . . . . . . . 15

    8.  Osteotech's Motion in Limine to Exclude Evidence of
       "Swelling" Testing That Was Not Timely Disclosed
       (Osteotech's Motion in Limine No. 8) . . . . . . . . . 18

    9.  Osteotech's Motion in Limine to Exclude Certain Expert
       Testimony Regarding Obviousness and Anticipation
       (Osteotech's Motion in Limine No. 9) . . . . . . . . . 20

    10.  Osteotech's Motion in Limine to Preclude GenSci from
       Supporting its Reverse Doctrine of Equivalents Claim by
       Comparing its Products to Osteotech's Products
       (Osteotech's Motion in Limine No. 10) . . . . . . . . . 23

    11.  Osteotech's Motion in Limine to Exclude Previously
       Undisclosed Prior Art (Osteotech's Motion in Limine
       No. 11) . . . . . . . . . . . . . . . . . . . . . . . . 24

    12.  Osteotech's Motion in Limine to Preclude Supplemental
       Eisch and Boyan Reports (Osteotech's Motion in Limine
       No. 12) . . . . . . . . . . . . . . . . . . . . . . . . 26

II. GENSCI'S MOTIONS IN LIMINE . . . . . . . . . . . . . . . 27

    1.  GenSci's Motion in Limine to Preclude Russell, Scarborough
       and Edwards from Offering Testimony And/Or Opinions at
       Trial, and to Preclude Edwards' Swelling Test (GenSci's
       Motion in Limine No. 1) . . . . . . . . . . . . . . . . 27

3.   GenSci's Motion in Limine to Preclude Evidence of Oral Communications Between Osteotech's Patent Attorneys and the PTO (GenSci's Motion in Limine No. 3) . . . . . . 28

5.   GenSci's Motion in Limine to Preclude Evidence Regarding Damages for Pre-filing Infringement Pursuant to Section 287 (GenSci's Motion in Limine No. 5) . . . . . . . . . . 29

7.   GenSci's Motion in Limine to Preclude Osteotech from Introducing Evidence of "Unexpected Results" (GenSci's Motion in Limine No. 7) . . . . . . . . . . . 29

8.   GenSci's Motion in Limine to Exclude Evidence of Osteotech's Exceptional Case Theory (GenSci's Motion in Limine No. 8) . . . . . . . . . . . . . . . . . . 30

9.   GenSci's Motion in Limine to Exclude Testimony of Gordon Peterson, Dr. Seth M. Zeidman, and Dr. Walter Sassard (GenSci's Motion in Limine No. 9) . . . . . . . . . . . 31

10.  GenSci's Motion in Limine to Exclude Late Produced Documents and Things and Never Produced Samples (GenSci's Motion in Limine No. 10) . . . . . . . . . . 33

11.  GenSci's Motion in Limine to Exclude Certain Testimony of Osteotech's Patent Law Expert (Motion in Limine No. 11) . . . . . . . . . . . . . . . . . . . . . 34

12.  GenSci's Motion in Limine to Exclude Certain Testimony and Exhibits of Osteotech's Technical Experts (GenSci's Motion in Limine No. 12) . . . . . . . . . . . . . . . 34

13.  GenSci's Motion in Limine to Exclude Testimony That GenSci Regeneration Sciences, Inc. is Liable (GenSci's Motion in Limine No. 13) . . . . . . . . . . . . . . . 36

14.  GenSci's Motion in Limine to Exclude Evidence that Questions the Osteogenic Activity of the DynaGraft Products (GenSci's Motion in Limine No. 14) . . . . . . . 38

15.  GenSci's Motion in Limine to Preclude Osteotech from Offering Evidence of Inducement to Infringe the Patents in Suit . . . . . . . . . . . . . . . . . . . . . . 39

III. OSTEOTECH'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . 40

1.   GenSci's Objection under Local Rule 7.4.2 to Osteotech's Renewed Motion for Summary Judgment That the Doctrine of Equivalents Does Not Apply . . . . . . . . . . . . . 40

2.   Osteotech's Renewed Motion for Summary Judgments That the Reverse Doctrine of Equivalents Does Not Apply . . . 40

IV. GENSCI'S MOTION TO DECLASSIFY DOCUMENTS DESIGNATED "CONFIDENTIAL-OUTSIDE COUNSEL ONLY" UNDER THE PROTECTIVE ORDER REGARDING CONFIDENTIAL INFORMATION ENTERED ON MARCH 13, 2000 . . . . . . . . 42

# I. OSTEOTECH'S MOTIONS IN LIMINE

1.      **Osteotech's Motion in Limine to Exclude Opinions of Counsel at Trial (Osteotech's Motion in Limine No. 1)**

The motion is GRANTED with regard to three 1997 letters that apparently were not produced by GenSci until after the close of discovery. Although GenSci may still explain that the 1998 letters incorporate and supersede earlier letters, only the November, 1998 letters will be admitted in evidence.

Osteotech argues that GenSci may not rely on any defensive opinions of counsel because it obtained them after it began allegedly infringing activity. The Court disagrees. GenSci did not have an absolute duty to obtain opinion letters before marketing its products. See, e.g., Rolls Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101 (Fed. Cir. 1986. The Rolls Royce court said that it is "well settled that where a potential infringer has actual notice of another's patent rights he has an affirmative duty of due care." Id. at 1109. Defensive opinions of counsel, while an important consideration, are not dispositive. Rather, a court should evaluate the "totality of the circumstances" on the issue of due care. Id.

GenSci makes a strong argument that it exercised due care by conducting an in-house analysis, and promptly obtaining formal opinions upon receiving actual notice of infringement. However, Osteotech's arguments regarding the timing of production are more persuasive. GenSci produced the November, 1998 letters in March, 2000. Although these letters state that they fully supersede the prior letters, Osteotech was entitled to all of the opinion letters. It apparently had a very difficult time learning about and obtaining the

4

1    1997 letters. Osteotech states that it did not even know about the

2    July 1997 draft letter until after the close of discovery and that the

3    two September, 1997 letters were also not produced until the close of

4    discovery. Even though the latter delay appears to have been caused by

5    Lyon & Lyon's objection to a subpoena requesting the letters,

6    Osteotech makes a convincing case that the 1997 letters were produced

7    after the close of discovery due to unreasonable delay.

9    **2.        Osteotech's Motion in Limine to Exclude Evidence of the MTF
              Patent (Osteotech's Motion in Limine No. 2)**

11       The motion is GRANTED. The MTF patent is not admissible to prove

the truth of its statements, and should not be used to confuse the

jury as to how infringement is to be gauged. Most important, the jury

should not be lead to believe that its patentability over the '558

patent is related to the scope of the '558 patent, or that the accused

products should be compared to anything other than the claims of the

patents-in-suit. However, the MTF patent may have other uses in

connection with expert testimony concerning the state of the art.

Particular uses may be pointed out to the Court as they arise.

         The MTF patent is hearsay to the extent it is offered to prove

the truth of its statements regarding the Grafton products or the

prior-issued '558 patent. The Court rejects GenSci's argument that a

patent granted after the patents-in-suit, offered to prove the truth

of its assertions regarding the patents-in-suit, is within the public

records exception. The public records exception applies to matters

observed by an official under a duty to report. Here, there is nothing

really being 'observed.' A patent is not a report or record collected

by a government agency in the normal course of business and therefore

1   does not come within the exception. Because the patent is hearsay, and

2   not within any exception, it is not admissible except in the limited

3   context of expert testimony. The Court may later determine that it has

4   some proper use on rebuttal as well.

5       The Court must also be mindful of the MTF patent's potential for

6   prejudice and weigh that consideration against its probative value on

7   any issue for which it is offered.

8

9   **3.**        **Osteotech's Motion in Limine to Exclude Testimony of Luke Vaughan (Osteotech's Motion in Limine No. 3)**

10

11       The motion is DENIED. Confidential material appears to have been

12   available to an expert whose relationship with GenSci was not

13   adequately disclosed pursuant to the March 13, 2000 Protective Order.

14   The Order provides that each side may designate certain documents as

15   "confidential - outside counsel only" if the documents are reasonably

16   believed to be so. Potential experts who will view this confidential

17   information must then sign a "Declaration of Compliance" stating that

18   they have read and will comply with the Order. The Order requires that

19   any such expert fully disclose her relationship to the parties,

20   including "any consulting activities." The other party may, after such

21   disclosure, object to the expert. The Order further provides that

22   outside counsel must be present during any discussions between a party

23   and its retained expert.

24       Dr. Vaughan has been a consultant for GenSci on new product

25   development since April, 1999, for which he has been paid at least

26   $30,000. Osteotech argues that GenSci should have disclosed this fact,

27   and that Osteotech never had an opportunity to object because it did

28   not know of the relationship between GenSci and Vaughan.

1   Except with respect to one particular item, Osteotech is rather
2   vague about which information was confidential. The only
3   "confidential" information specifically identified consists of a brief
4   summary of average incremental profitability data for Osteotech's
5   Grafton gel and putty products. Nevertheless, it appears that the
6   entire Troxel report was stamped confidential.

7   The inadvertence of GenSci's failure to disclose is irrelevant.
8   Osteotech had a right to object to any expert with a consulting
9   relationship under the terms of the Protective Order. Osteotech's
10  right to object at that time was abrogated by GenSci's failure to
11  disclose. However, the Court does not believe that the materiality of
12  the information available to Dr. Vaughan was of sufficient
13  significance to warrant exclusion of all of his testimony.

14  There is no evidence that the profitability data were ever
15  actually reviewed by Dr. Vaughan, and the data certainly were not
16  material to Vaughan's report, which concerns technical aspects of the
17  invention. The only evidence that Vaughan had access to the Troxel
18  report is a generic statement that Vaughan reviewed the expert reports
19  and attached exhibits. Protective orders should not be taken lightly -
20  without them, many litigants would be prevented from seeking
21  resolution of intellectual property disputes in the courts lest they
22  be forced to disclose their confidential information. However, in this
23  case Osteotech has not made a sufficient showing of prejudice to
24  warrant an exclusion order.

25
26
27
28

4.        Osteotech's Motion in Limine to Exclude Inventor Testimony
          Regarding the Scope and Principle of the Invention, Claim
          Construction and § 112 Defenses (Osteotech's Motion in
          Limine No. 4)

The Court DECLINES TO RULE until it has been presented with a

more specific statement of what the inventor intends to say. Inventor

testimony is generally inadmissible on matters of claim construction

and with regard to 35 U.S.C. § 112 ¶2. Inventor testimony is

admissible, at least to some extent, on the issues of written

description, enablement and the reverse doctrine of equivalents.

With regard to the written description requirement, Osteotech

argues that because an objective standard is employed (whether the

description allows one of ordinary skill in the art to recognize that

the inventor was in possession of the invention), inventor testimony

is inappropriate. Although the standard is an objective one, see,

e.g., Solomon v. Kimberly-Clark Corp., 216 F.3d 1372, 1379 (Fed. Cir.

2000), it is not true that inventor testimony is never heard on the

subject of written description.

GenSci cites a number of cases where the Federal Circuit has

accepted inventor testimony regarding written description and

enablement issues. See, e.g., Gentry Gallery, Inc. v. Berkline Corp.,

134 F.3d 1473 (1998) (affirming district court's partial reliance on

inventor's testimony that he had not considered placing the controls

elsewhere until he had seen others' devices). It is argued that in

Gentry Gallery the inventor's testimony was only accepted by the court

to "corroborate" the intrinsic evidence. However, the Federal Circuit

accepted the inventor testimony as evidence the district court

properly considered. See id. at 1475. In fact, it relied in part on

that testimony in upholding the court's decision. See also, Wang

1  Labs., Inc. v. Toshiba Corp., 993 F.2d 858 (Fed. Cir. 1993) (relying

2  in part on inventor testimony that "on leaded SIMMs, the leads

3  themselves are the support means, and that on leadless SIMMs, the

4  bottom row of terminals constitutes the support means," in holding

5  that the means element was adequately described).

6      Osteotech cites Reiffen v. Microsoft, 214 F.3d 1342 (Fed. Cir.

7  2000) to support the proposition that only intrinsic evidence may be

8  used in evaluating the written description. But Reiffen says no such

9  thing. Rather, Reiffen indicates that the specification of the patent

10 at issue, and not other specifications, should be used. It does not

11 expressly limit the written description inquiry to intrinsic evidence.

12 Although intrinsic evidence may be preferred, the Federal Circuit

13 appears to consider other evidence, including inventor testimony, on

14 the subject of written description.

15     It is not disputed that an inventor may testify about enablement

16 by stating the results of past experimentation, as evidence that undue

17 experimentation would be required. See, e.g., Enzo Biochem v. Calgene,

18 Inc., 188 F.3d 1362, 1373 (Fed. Cir. 1999) (failed attempts by the

19 inventor to achieve results taught by the specification were probative

20 of nonenablement). Osteotech argues, however, that the inventors

21 should not be allowed to testify about what actually worked for

22 practical purposes during experimentation. The Court disagrees. The

23 inventor's experience regarding whether undue experimentation is

24 required to practice the patent is relevant to the enablement inquiry,

25 and testimony which bears on that factor is admissible.

26

27     Osteotech also argues that the reverse doctrine of equivalents is

28 an objective determination, and that inventor testimony is irrelevant

1 in this regard. The principle of the invention, says Osteotech, should
2 be objectively determined from intrinsic evidence. However, many kinds
3 of proof may be used to support a finding of equivalence, including
4 testimony of "those versed in the technology." For example, in <u>Hilton
5 Davis Chem Co. v. Warner-Jenkinson Co.</u>, 62 F.3d 1512 (Fed. Cir.,
6 1995), <u>rev'd on other grounds</u>, 520 U.S. 17 (1997) the court relied on
7 an inventor's testimony that a pH of 5 would have the same effect as a
8 pH of 6, supporting a finding that Warner-Jenkinson's pH variation
9 from the claimed range was insubstantial.

10
11 5.      Osteotech's Motion in Limine to Exclude Evidence Concerning
        Abandoned or Unraised Claims or Defenses (Osteotech's Motion
        in Limine No. 5)
12
13      The motion is MOOT with respect to evidence of the dismissed
14 business torts recited in Counts 2 through 5 of GenSci's Third Amended
15 Complaint, GRANTED with respect to evidence of inequitable conduct,
16 and DENIED with respect to evidence of various other invalidity
17 defenses that GenSci allegedly disclosed for the first time in its
18 Memorandum of Contentions of Fact and Law dated September 6, 2000.

19      a.   <u>Business Torts</u>

20      In its opposition to this Motion, GenSci asserts that it will not
21 seek attorney fees, and will not raise defenses under 35 U.S.C. §
22 102(f) for misjoinder of Patrick McBrayer, or under 35 U.S.C. § 112
23 for "claim indefiniteness" or "failure to disclose best mode." GenSci
24 argues that this renders Osteotech's briefing on these issues moot.
25 Because GenSci sought to establish its entitlement to attorney fees
26 via evidence of the business torts referenced above, the Court
27 interprets GenSci's remarks as a stipulation that evidence pertaining
28 to the dismissed business torts of Counts 2 through 5 of GenSci's

1 │ Third Amended Complaint is inadmissible and therefore will not be

2 │ presented at trial.  The Court interprets GenSci's remarks regarding

3 │ both the §§ 102(f) and 112 defenses in the same way.  Thus, GenSci

4 │ agrees that any evidence directed to these defenses is inadmissible.

5 │     **b.**  **Inequitable Conduct**

6 │     Osteotech argues that evidence of inequitable conduct should also

7 │ be excluded from the case because GenSci never pleaded this defense,

8 │ and because it failed to disclose its intentions regarding inequitable

9 │ conduct in its responses to interrogatories expressly seeking to

10 │ elicit such disclosure.  See Interrogatory No. 9 (Brown Decl. Ex. G)

11 │ (seeking identification of any information alleged to have been

12 │ improperly withheld from the U.S. PTO, or any false or misleading

13 │ information provided during patent prosecution).  GenSci counters that

14 │ it initially pleaded inequitable conduct by alleging that the patentee

15 │ was guilty of "unclean hands."  Inequitable conduct is an affirmative

16 │ defense to patent infringement, see, e.g., Life Tech., Inc. v.

17 │ Clontech Labs. Inc., 224 F.3d 1320, 1323 (Fed. Cir. 2000), that must

18 │ be noticed in the pleadings.[1]  See Fed. R. Civ. P. 8(c).  GenSci

19 │ offers no legal support for the proposition that a party impliedly

20 │ pleads inequitable conduct in a patent case when it expressly pleads

21 │ unclean hands.  "Equity's 'unclean hands' doctrine demands that '[one]

22 │ who seeks equity must do equity.'" Shockley v. Arcan, Inc., 248 F.3d

23 │ 1349, 1361 (Fed. Cir. 2001) (quoting Mfr.'s Fin. Co. v. McKey, 294

24 │ U.S. 442, 449 (1935)).  The defense of unclean hands, therefore, is

25 │ only a defense to claims for equitable relief.  As a result, pleading

26 │ "unclean hands" could, at the very most, only permit GenSci to raise

27 │

28 │ ─────────────────
[1]    The Court does not need to address the claim that inequitable conduct must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure, because GenSci cannot even show that it noticed the defense.

11

1  the defense of inequitable conduct insofar as it seeks to defeat a

2  prayer for equitable relief.

3           c.  **Invalidity Defenses**

4      Osteotech also seeks to exclude evidence upon which GenSci bases

5  its invalidity arguments, because GenSci allegedly did not clearly

6  articulate the defenses or disclose the facts upon which they are

7  based.  Specifically, Osteotech argues that such facts are absent from

8  GenSci's pleadings, expert reports and discovery responses.  GenSci

9  argues that it satisfied the pleading requirements, and that it

10 notified Osteotech of the supporting facts at issue via supplemental

11 interrogatory responses, expert reports, and deposition testimony.

12     It is clear that although GenSci generally satisfied the notice

13 pleading requirement for its invalidity defenses under Section 112, it

14 failed to notify Osteotech of the written description and enablement

15 defenses at issue here until GenSci filed its first Memorandum of

16 Contentions of Fact and Law on September 6, 2000.  GenSci offers no

17 evidence that this disclosure, which occurred just weeks before trial

18 was scheduled to begin, was "seasonable" under Rule 26.  See Fed. R.

19 Civ. P. 26(e)(2) (requiring litigants to seasonably update prior

20 interrogatory responses when the information has not otherwise been

21 disclosed).

22     District Courts in the Ninth Circuit consider five factors when

23 determining whether a violation of Rule 26 warrants exclusion of

24 evidence.  See Wendt v. Host Int'l., Inc., 125 F.3d 806, 814 (9th Cir.

25 1997) (applying the factors set forth in Wanderer v. Johnston, 910

26 F.2d 652, 656 (9th Cir. 1990), to Rule 26 violations).  In Wanderer,

27 the Ninth Circuit held that, among the five factors, the element of

28 prejudice is essential because of its due process implications.  See

1  <u>Wanderer</u>, 910 F.2d at 656.  Osteotech argues that GenSci's failure to

2  disclose sooner is unfairly prejudicial because Osteotech has never

3  had an opportunity to conduct discovery on any of these "newly added"

4  defenses.  This argument is somewhat disingenuous because it ignores

5  the fact that GenSci disclosed these defenses over thirteen months

6  ago.  Osteotech cannot now claim it is surprised.  After considering

7  the <u>Wanderer</u> factors, the Court finds that this violation of Rule 26

8  does not warrant exclusion of this evidence.

9

10  **6.      Osteotech's Motion in Limine to Preclude Untimely Expert
   Reports and Testimony (Osteotech's Motion in Limine No. 6)**

11       This motion is DENIED with respect to the supplemental expert

12  reports of Mr. Malmlund and Mr. De Stefano, and the second

13  supplemental expert report of Dr. Vaughan.  The motion is DENIED with

14  respect to the third supplemental expert report of Dr. Vaughan, ONLY

15  IF GenSci promptly discloses what Dr. Vaughan intends to say about the

16  x-rays and how they will be used at trial to support his opinions.

17       Osteotech argues that the four supplemental expert reports should

18  be excluded from trial because they were served after discovery

19  concluded, and because they allegedly do not simply correct an

20  incomplete or inaccurate report or provide updated opinions in light

21  of recent data.

22       **a.  <u>Mr. Malmlund</u>**

23       Osteotech concludes, without discussion, that several opinions in

24  Mr. Malmlund's supplemental expert report were previously undisclosed,

25  that others are supported by previously undisclosed bases, and that

26  the previously undisclosed information was available to the experts at

27  the time they completed their original reports.  In its brief, GenSci

28  explains in detail how Mr. Malmlund's supplemental report is based on

1   new information provided to GenSci in several depositions that took

2   place after Mr. Malmlund filed his initial report, and how such

3   information is simply used to buttress and update Mr. Malmlund's prior

4   opinions.   The Court is satisfied that Mr. Malmlund's supplemental

5   report is legitimately based on new information that could not have

6   been disclosed in the initial report.   In addition, the Court does not

7   find the post-discovery filing date unreasonable, because the

8   supplemental report issued relatively soon after the new information

9   was disclosed.

10          **b.   <u>Mr. De Stefano</u>**

11          Again, Osteotech concludes without analysis that Mr. De Stefano's

12  report raises new opinions.   GenSci responds with a detailed

13  explanation of how the information contained in the reports was only

14  disclosed to Mr. De Stefano after his initial reports were filed, and

15  how such information supplements his previously disclosed opinions.

16  GenSci also explains how questions that were asked at Mr. De Stefano's

17  deposition prompted him to request additional documents, albeit from

18  GenSci, to assist him in completing his report.   There is no evidence

19  that Mr. De Stefano was in possession of this information when he

20  submitted his initial report, or that GenSci temporarily withheld the

21  information from him in an attempt to gain some sort of tactical

22  advantage over Osteotech.   The Court is satisfied that the

23  supplemental report from Mr. De Stefano is legitimately based on new

24  information that was disclosed for the first time during, or as a

25  result of, discovery.   Thus, the supplemental report of Mr. De Stefano

26  is admissible for the same reason that the report of Mr. Malmlund is

27  admissible.

28

c. **Dr. Vaughan**

Osteotech argues that the opinions appearing in Dr. Vaughan's Second Supplemental Report are all moot because they were allegedly put forward by GenSci for the sole purpose of supporting a motion that this court has since denied – the motion to withdraw GenSci's admissions that its products are osteogenic.  However, Osteotech has not established that these opinions only support the motion to withdraw.  The Court is satisfied that the opinions are based on previously unavailable information presented at an annual meeting of the North American Spine Society (NASS) that took place after Dr. Vaughan submitted his first supplemental report.  Therefore, the second supplemental report of Dr. Vaughan is admissible to the extent it remains relevant.

Osteotech states that the opinions in Dr. Vaughan's Third Supplemental Report would not be objectionable if Dr. Vaughan would disclose what he intends to say about the newly disclosed x-rays, or how those x-rays support his opinions.  Therefore, the Court will allow the Third Supplemental Report, but only if GenSci promptly discloses what Dr. Vaughan intends to say about the x-rays and how they will be used at trial to support his opinions.

7.        **Osteotech's Motion in Limine to Exclude Previously Undisclosed Witnesses (Osteotech's Motion in Limine No. 7)**

The motion is DENIED with respect to all witnesses except Mr. Mark Borden.[2]  Osteotech urges the Court to exclude nine witnesses from trial because GenSci allegedly failed to disclose information about them in a timely manner pursuant to Local Rule 6.2.1 and Federal

---

[2]        Note that Dr. Benjamin Mosier is excluded from testifying as an expert on other grounds.  See infra Section I, Part 8 (ruling on Osteotech's Motion in Limine No. 8).

Rule of Civil Procedure 26.   Seven of the witnesses were disclosed on September 5, 2000, almost three months after the close of discovery, and two were added to GenSci's witness list on August 24, 2001, less than two months before trial was scheduled to begin.

Local Rule 6.2.1 requires litigants to initially disclose "[t]he names and last known addresses and telephone numbers of all individuals who have knowledge of facts supporting the material allegations of the pleading filed by that party, or rebutting the material allegations of the pleadings filed by any opposing party." See L.R. 6.2.1.   "The parties shall then be under a continuing duty promptly to advise each other of such additional individuals as they become known to them after the initial disclosure."   Id.; see also Fed. R. Civ. P. 26 (requiring the initial and supplemental disclosures of individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses).   Local Rule 6.3.2 provides that a witness not disclosed under Local Rule 6.2.1 may be subject to exclusion at trial.   See L.R. 6.3.2; see also Fed. R. Civ. P. 37(c)(1).

Osteotech claims that GenSci failed to promptly disclose the identities of the nine witnesses at issue, but fails to establish that these witnesses should have been disclosed any earlier.   Osteotech repeatedly asserts that GenSci "should have known" that it would call the witnesses long before they were actually disclosed, because many are employees of GenSci or of companies "friendly" with GenSci. However, it does not follow that GenSci knew from the beginning that these individuals possessed knowledge of facts supporting the material allegations in the pleadings, much less that these individuals would eventually be called as witnesses.   GenSci was under no obligation to

16

1 automatically disclose the names of everyone employed by GenSci or by
2 companies "friendly" to GenSci.  Such indiscriminate disclosures would
3 not facilitate discovery because too much chaff would be included with
4 the wheat.  The relevant procedural rules only require disclosure of
5 individuals who have knowledge of facts supporting the material
6 allegations in the pleadings, see Local Rule 6.2.1, or who are likely
7 to have discoverable information.  See Fed. R. Civ. P. 26.

8      GenSci explains that the testimony of six out the seven witnesses
9 disclosed on September 5, 2000 became relevant only after Osteotech
10 produced certain documents, after certain tests were conducted, or
11 after Osteotech failed to stipulate to certain facts.  The Court is
12 satisfied that the delays associated with these disclosures were not
13 unreasonable.  In any case, the disclosure of the seven witnesses on
14 September 5, 2000 is not sufficiently prejudicial to warrant
15 exclusion.

16      As for the remaining two witnesses, Dr. Mosier and Mr. Borden,
17 Osteotech alleges they were both identified for the first time in
18 August of 2001.  However, Osteotech notes in its Motion in Limine No.
19 8 that GenSci served a declaration from Dr. Mosier in February of 2000
20 in connection with GenSci's summary judgment motion.  Filing a
21 declaration clearly and unambiguously signals that the declarant is
22 likely to have discoverable information that the disclosing party may
23 use to support its claims or defenses.  Thus, at the latest, Dr.
24 Mosier was identified in February of 2000.  Osteotech does not argue
25 that a February disclosure was too late.

26      Unlike Dr. Mosier, it appears that Mr. Borden was disclosed for
27 the first time on August  24, 2001.  Though Osteotech fails to
28 establish that Mr. Borden could have been disclosed any earlier, the

1  fact that he was first disclosed so near to trial prompts the court to

2  seek an explanation from GenSci.  Instead of explaining why Mark

3  Borden was not disclosed earlier, GenSci simply argues that he will

4  only be a rebuttal witness and is therefore "unobjectionable."

5  Whether or not a witness will be a rebuttal witness is irrelevant

6  under the local rules insofar as the disclosure requirements are

7  concerned.  See L.R. 6.2.1 (requiring disclosures of rebuttal

8  witnesses).  Mr. Borden should be excluded because there appears to be

9  no excuse for his tardy identification and, among other things, the

10  late disclosure significantly and unfairly prejudices Osteotech due to

11  its close proximity to the trial date.  See Fed. R. Civ. P. 37(c)(1)

12  (providing for exclusion of evidence not properly disclosed under Rule

13  26 unless the behavior was harmless or substantially justified); L.R.

14  6.3.1 (providing for exclusion of similar evidence under the local

15  rules in effect when the conduct in this case occurred); see also

16  Wendt v. Host Int'l., Inc., 125 F.3d 806, 814 (9th Cir. 1997)

17  (applying factors set forth in Wanderer v. Johnston, 910 F.2d 652, 656

18  (9th Cir. 1990), including the existence of prejudice, to Rule 26

19  violations).

20

21  8.        **Osteotech's Motion in Limine to Exclude Evidence of
            "Swelling" Testing That Was Not Timely Disclosed**
22            **(Osteotech's Motion in Limine No. 8)**

23       The motion is DENIED, except with respect to Dr. Mosier. Dr.

24  Mosier may not testify as an expert because he did not file an expert

25  report.[3] Osteotech seeks to exclude evidence of GenSci swelling

26  testing conducted after the close of discovery (the Second Khaliq

27  _____

28       [3] To the extent Khaliq's status is equivalent to Mosier's, he may not testify
    as an expert for the same reasons discussed below.

1  study and the Mosier study). The Second Khaliq and Mosier studies were

2  performed after the expert disclosure deadline.

3      Osteotech first argues that the Second Khaliq Study should be

4  excluded because it is unreliable, citing its opinion that a sample

5  size of two bone particles is too small; that Khaliq failed to

6  properly seal the slide, allowing evaporation to occur; and that the

7  test results were 'bizarre,' indicating an unknown experimental flaw.

8  Such a study design is not inherently unreliable, and should not be

9  excluded on that basis. Rather, it should be subject to rebuttal by

10 other experts at trial.

11     It does appear, as Osteotech argues, that Dr. Mosier did not

12 disclose his opinions and test results until he filed a declaration in

13 February, 2001 - ten months after the deadline to disclose expert

14 opinions. It further appears that Mosier was a "retained expert"

15 subject to Fed. R. Civ. P. 26(a)(2)(B), and was required to produce a

16 written report. Fed. R. Civ. P. 37(c)(1) provides that information not

17 disclosed pursuant to Fed. R. Civ. P. 26(a) must be excluded unless

18 there is "substantial justification." the Court sees no such

19 justification here. Khaliq's status is not clear based on the parties'

20 briefing. However, to the extent he is "a witness who is retained or

21 specially employed to provide expert testimony in the case or whose

22 duties as an employee of the party regularly involve giving expert

23 testimony," Fed. R. Civ. P. 26(a)(2)(B), he is subject to the same

24 restrictions as Dr. Mosier in this regard.

25     GenSci states that Mosier and Khaliq will appear as witnesses, if

26 at all, "for foundational purposes" only. There appears to be no rule

27 stating that foundational expert witnesses escape the report

28 requirement. They will therefore not be allowed to testify as experts

for any purpose. See Local Rule 9.4.6 (providing that expert reports
are required "[i]f expert witnesses are to be called at trial.")

9.      Osteotech's Motion in Limine to Exclude Certain Expert
        Testimony Regarding Obviousness and Anticipation
        (Osteotech's Motion in Limine No. 9)

The motion is GRANTED.  However, Dr. Eisch will be permitted to
opine as to whether the Thiele and Campbell patents anticipate the
patents in suit.  Osteotech argues that the Court should limit the
extent to which Drs. Eisch and Boyan testify as to whether the patents
in suit are anticipated and obvious because the discussions of these
issues in their initial expert reports are incomplete.[4]

According to Federal Rule of Civil Procedure 26, expert reports
must contain "a complete statement of all opinions to be expressed and
the basis and reasons therefor."  See Fed. R. Civ. P. 26(a)(2)(B).
Rule 26(e) also provides that information in expert reports must be
supplemented if a party learns that in some material respect the
information disclosed is incomplete or incorrect and if the additional
information has not otherwise been made known to the other parties
during the discovery process or in writing.  See Fed. R. Civ. P.
26(e)(1).  It follows, therefore, that an expert's testimony at trial
should be limited to the information properly disclosed in his or her
expert report or properly supplemented under Rule 26.

    a.  Dr. Eisch

Osteotech argues that Dr. Eisch should not be allowed to testify
regarding anything other than whether the Thiele and Campbell patents
anticipate the patents in suit because he only explicitly analyzed

---

[4]     The Supplemental Expert Reports of Drs. Eisch and Boyan need not be
considered because the Court has found them inadmissible.  See infra Section I, Part
12 (ruling on Osteotech's Motion in Limine No. 12).

1  anticipation with respect to those prior art patents.  The Court

2  agrees.  In his report, Dr. Eisch summarily concludes that "there are

3  numerous combinations of references that could render the claims of

4  the '558 and '655 patents either anticipated or obvious," but he does

5  not provide a complete statement of the bases for these conclusions.

6  Instead he writes, "One example of the application of these references

7  is provided in Exhibit F."  Exhibit F ostensibly demonstrates how the

8  Thiele patent anticipates the patents in suit.  Later, Dr. Eisch

9  explains that the Campbell patent also anticipates the patents in

10  suit.  He does not expressly say that any other references anticipate

11  the patents in suit, much less explain how they might anticipate.  He

12  also fails to specifically disclose which references combine to render

13  the patents in suit obvious, and he never identifies any source for

14  the required suggestion or motivation to combine such references.  See

15  Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1323-24 (Fed. Cir.

16  1999) ("The party seeking patent invalidity based on obviousness must

17  also show some motivation or suggestion to combine the prior art

18  teachings.").  Dr. Eisch completely fails to address the issue of

19  suggestion or motivation to combine.  Therefore, it is clear that he

20  did not completely state the bases and reasons for his conclusion that

21  the patents in suit were obvious.

22          **b.  Dr. Boyan**

23      Osteotech argues that Dr. Boyan should be precluded from

24  testifying regarding anticipation and obviousness because she

25  allegedly did not adequately disclose the bases for her conclusions

26  regarding these issues.  GenSci does not claim that Dr. Boyan

27  addressed anticipation, and the Court is satisfied that she did not.

28

1 Therefore, Dr. Boyan will not be allowed to render an opinion

2 regarding whether the patents in suit are anticipated.

3      With respect to obviousness, Dr. Boyan only addresses the use of

4 demineralized bone particles in a carrier and the use of polyhydroxy

5 compounds as carriers.  She provides no opinions regarding other

6 elements of the invention.  Therefore, she should be excluded from

7 opining as to whether the patents in suit are obvious to the extent

8 that the claims include elements other than those she addressed.  "In

9 a challenge based on obviousness under 35 U.S.C. § 103, the person

10 alleging invalidity must show prior art references which alone or

11 combined with other references would have rendered the invention

12 obvious to one of ordinary skill in the art at the time of invention."

13 Al-Site Corp., 174 F.3d at 1323.  Identifying prior art references

14 that render obvious only select elements of the invention is not

15 sufficient to support a conclusion of non-obviousness.  Thus, Dr.

16 Boyan did not even provide a colorable basis for concluding that the

17 claims of the patents in suit are obvious, and therefore should be

18 prohibited from testifying to this conclusion at trial.

19

20      Limiting the extent to which Drs. Eisch and Boyan may testify

21 does not necessarily destroy their utility as witnesses.  Although

22 they shall not be permitted to conclude that the patents in suit are

23 anticipated or obvious, except as noted above, they may still testify

24 as to any conclusions that find adequate support in their admissible

25 reports.

26

27

28

22

10.      **Osteotech's Motion in Limine to Preclude GenSci from Supporting its Reverse Doctrine of Equivalents Claim by Comparing its Products to Osteotech's Products (Osteotech's Motion in Limine No. 10)**

The Court GRANTS this motion. GenSci may not compare the respective products in its infringement analysis, use them to illustrate the properties of glycerol, or use them to bolster its theory of the principle of the invention.

In analyzing infringement, it is generally improper to compare the patentee's product to the accused product. Rather, the claims of the patents in suit should be compared to the accused products. Although a patentee's products are not per se inadmissible, there is a strong possibility of prejudice and confusion if they are admitted.

GenSci does not suggest that the two products should be compared as part of its infringement analysis. Rather, it seeks to admit Grafton to illustrate the properties of Glycerol and the principle of the invention. Such a use would be too prejudicial to Osteotech, whose patent literally covers far more than the use of glycerol. It would also be confusing to the jury, which must evaluate infringement by comparing the patent claims to the accused product.

There is no indication that Grafton fairly illustrates the properties of glycerol generally. Grafton is more than just glycerol. It includes demineralized bone and other ingredients, and it is processed in a certain way. It does not necessarily follow from Grafton's behavior that other glycerol-containing products would behave in the same way.

In seeking to compare the accused product to the patentee's commercial embodiment in its reverse doctrine case, GenSci appears to conflate enablement with the reverse doctrine of equivalents. The

23

theory that Grafton is the only enabled embodiment does not justify a
comparison of that embodiment to the accused product in the
infringement analysis. The patents in suit clearly purport to cover
more compounds than those practiced by Osteotech. If only glycerol is
enabled, then the patent is invalid and the reverse doctrine is not
relevant. On the other hand, if the reverse doctrine fairly restricts
the equitable scope of the claims to normal phase carriers, then
Grafton does not fairly represent the covered range of normal phase
carriers. There is therefore no reason to compare Grafton with
GenSci's products in this context.

Finally, GenSci may not use Osteotech's commercial embodiment to
support its theory of the principle of the invention. The use of
Grafton in this context would also be far too confusing to the jury,
and would be highly prejudicial to Osteotech.

**11.      Osteotech's Motion in Limine to Exclude Previously
          Undisclosed Prior Art (Osteotech's Motion in Limine No. 11)**

The motion is GRANTED.  Osteotech argues that the Court should
exclude seven previously undisclosed prior art patents that appear in
GenSci's Section 282 Notice of Prior Art, dated August 24, 2001.
GenSci offers no opposition to this motion.

In 1999, Osteotech propounded an interrogatory requesting
identification of the claims GenSci alleges to be invalid and
disclosure of "all facts upon which GenSci Labs relies supporting each
such allegation of invalidity."  The seven patents in question
apparently were not disclosed in GenSci's interrogatory answers, its
supplemental interrogatory answers, or its original § 282 Notice dated
September 22, 2000.  Instead, they were disclosed for the first time
in GenSci's second § 282 Notice of Prior Art.  The Federal Rules of

24

1  Civil Procedure require parties to supplement incomplete interrogatory

2  answers, without prompting by the court, unless the additional

3  information has otherwise been made known to the other party during

4  the discovery process or in writing. See Fed. R. Civ. P. 26(e)(2).

5  GenSci offers no opposition to this motion, and therefore provides no

6  evidence that the prior art references were otherwise disclosed.

7         Courts have discretion to exclude prior art identified for the

8  first time in a Section 282 Notice when such disclosure is in

9  violation of a specific judicial directive. See ATD Corp. v. Lydall,

10 Inc., 159 F.3d 534, 550-51 (Fed. Cir. 1998) (holding that, although "§

11 282 sets a minimum period for the identification of prior art to be

12 introduced as evidence of anticipation, a specific judicial directive

13 for the timing of discovery establishes the procedures to which the

14 parties are bound."). Federal Rule of Civil Procedure 37 provides for

15 exclusion of evidence not properly disclosed pursuant to Rule 26

16 unless such failure is harmless or substantially justified. See Fed.

17 R. Civ. P. 37(c)(1); see also L.R. 6.3.1 (providing for exclusion of

18 similar evidence under the Local Rules). District Courts in the Ninth

19 Circuit consider five factors when determining whether a violation of

20 Rule 26 warrants exclusion of evidence. See Wendt v. Host Int'l.,

21 Inc., 125 F.3d 806, 814 (9th Cir. 1997) (applying the factors set

22 forth in Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990), to

23 Rule 26 violations). Under this test, exclusion is proper because,

24 among other things, Osteotech would be significantly and unfairly

25 prejudiced if it were required to address this new prior art without

26 adequate time to prepare.

27

28

25

**12.      Osteotech's Motion in Limine to Preclude Supplemental Eisch and Boyan Reports (Osteotech's Motion in Limine No. 12)**

This motion is GRANTED. The supplemental reports may have been proper in light of this Court's claim construction and other orders had they been timely filed. However, they were not delivered until the eve of trial, many months after the orders in question. The Court therefore finds that it would be unduly prejudicial to allow the supplements.

Osteotech argues that the supplemental expert reports of Eisch and Boyan should be excluded because they do not constitute proper supplementation under Rule 26(e). The supplements to the Eisch and Boyan reports were not served on Osteotech until August 24 and 27, 2001. Osteotech also argues that the supplemental disclosures include new material that should have been included in the initial reports. GenSci responds that the opinions and bases therefor only became relevant after this Court's claim construction and summary judgment orders. These Orders were issued on December 7, 2000 and April 6, 2001 respectively. GenSci provides no specific excuse for why it offered its supplements at the end of August, 2001 - long after it reasonably should have accounted for new information from those proceedings.

Rule 26(e) provides that supplements to expert reports must be provided at "appropriate intervals." GenSci's late disclosure is well short of the mark and therefore violates Rule 26. The decision whether to exclude evidence based on a Rule 26 violation is informed by Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990). That case

> requires us to determine whether a sanction is proper under a five-factor test analyzing: 1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; 5) the availability of less drastic sanctions.

See Wendt v. Host Int'l., Inc., 125 F.3d 806, 814 (9th Cir. 1997) (holding that the Wanderer factors apply in this context). The weight of the above factors supports exclusion of the supplemental reports. Even if the supplements are reasonably related to the scope of the new Orders in this case, their untimeliness, and the fact that they were disclosed on the eve of trial, would work a grave prejudice against Osteotech. Osteotech had no time to prepare a response to these supplements, and it appears that GenSci could have served them months earlier. GenSci instead waited until the eve of trial. Although the Court has a wide range of sanctions at its disposal, only exclusion will serve to cure the prejudice while still promoting the just and expeditious resolution of this case.

## II. GENSCI'S MOTIONS IN LIMINE

1.  **GenSci's Motion in Limine to Preclude Russell, Scarborough and Edwards from Offering Testimony And/or Opinions at Trial, and to Preclude Edwards' Swelling Test (GenSci's Motion in Limine No. 1)**

This motion is DENIED.

GenSci argues that Russell, Scarborough and Edwards' expert testimony be excluded for failure to provide expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B). This provision requires "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony," to provide a report. The challenged witnesses are not "specially employed" to give expert testimony. Nor is there any evidence that their duties regularly involve giving expert testimony. They are therefore not required to produce expert reports according to Rule 26(a)(2)(B).

1    Dr. Edwards' study was not disclosed until after the expert
2    disclosure deadline, and indeed after the close of discovery.
3    Osteotech argues that, because the study was attorney work product, it
4    had no obligation to disclose it. This is true. However, Osteotech
5    should have disclosed the study as soon as it knew it was going to use
6    it at trial. It learned about Osteotech's First Khaliq study on May
7    30, 2000, two weeks before the close of discovery. Dr. Kanner
8    supposedly reviewed the report for some time before it was ultimately
9    disclosed on August 16, 2000 - well after the close of discovery and
10   on the eve of trial. However, because the disclosure was not grossly
11   late, the Court will allow the study. The prejudice to GenSci is
12   minimal, and it appears that Osteotech did not form the intent to use
13   the Edwards study until May 30, 2000.

14   GenSci also argues that the Edwards study is not admissible under
15   Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)
16   because (a) the experiment was not conducted with the DynaGraft
17   products; (b) there was no 'direct measurement' of the bone particles;
18   and (c) the experimental methods are unreliable. GenSci has raised
19   issues that go to the weight a jury should afford the studies; not
20   their admissibility under Daubert. Dr. Edwards mixed the same
21   ingredients as the DynaGraft products, in the same proportions, and at
22   the correct temperature. Her only deviation was to maintain the
23   compound at a lower temperature, which she will testify only hastened
24   the uptake of swelling agent. There is also no indication that direct
25   measurement is the only way to measure swelling, and Dr. Edwards' use
26   of aggregate measurement does not render the study inadmissible. The
27   methods used by Dr. Edwards in conducting her experiment are
28   appropriately considered by the jury.

28

3.     **GenSci's Motion in Limine to Preclude Evidence of Oral Communications Between Osteotech's Patent Attorneys and the PTO (GenSci's Motion in Limine No. 3)**

The motion is GRANTED.

GenSci believes that Osteotech may seek to introduce certain oral communications made between its patent attorneys and the Patent and Trademark Office ("PTO") during prosecution. 37 C.F.R. § 1.2 (1997) provides that all business with the PTO should be in writing, and that all actions of the PTO will be based exclusively on the written record in the Office. This Court will not allow Osteotech to supplement the file history with evidence of oral communications with the patent examiner. Allowing such evidence into the case would not serve the public notice function of the patent system, which is the purpose of the writing requirement noted above.

Osteotech represents that it "does not intend to call any witnesses who participated in any such communications." Osteotech attempts to hedge by stating that it may call such witnesses in rebuttal. The Court holds that it may not.


5.     **GenSci's Motion in Limine to Preclude Evidence Regarding Damages for Pre-filing Infringement Pursuant to Section 287 (GenSci's Motion in Limine No. 5)**

The motion is VACATED, with leave to refile after the liability phase.

GenSci seeks an order precluding Osteotech from referring to or introducing evidence regarding damages for infringement of the patents in suit. This case will be tried in phases, and the damages portion will be tried after the liability phase of the trial. It is not anticipated that evidence regarding damages will be relevant in the

liability phase. Should any issues regarding the admissibility of damages-related evidence arise during the liability phase, the Court will consider them at that time.

7.    **GenSci's Motion in Limine to Preclude Osteotech from Introducing Evidence of "Unexpected Results" (GenSci's Motion in Limine No. 7)**

The motion is DENIED.  GenSci argues that the Court should preclude Osteotech from introducing any evidence supporting the representation made by Osteotech's patent attorney to the patent examiner regarding "unexpected results" because Osteotech failed to produce evidence during discovery supporting the assertion that such results existed.  Osteotech states that it has already produced all documents responsive to GenSci's interrogatory asking for production of all documents and things which underlie or form the basis for statements made to the PTO. Osteotech also asserts that GenSci never asked it to explain the basis for its patent counsel's statement to the Examiner.

This motion does not relate to whether Osteotech should be permitted to argue that its patent application was allowed by the patent examiner based on a showing of "unexpected results."[5]  Instead, it appears that GenSci's theory of inequitable conduct is the driving force behind this motion.  GenSci apparently seeks to prevent Osteotech from defending a statement in the prosecution history that suggests the invention may be the product of unexpected results. Since GenSci will not be permitted to present evidence of inequitable conduct at trial, see supra, Section I, Part 5 (discussing Osteotech's

---

[5]    In its opposition to this motion, Osteotech admits that it did not pursue, in any form, an attempt to persuade the Examiner to allow the patent application on that basis.

30

1  Motion in Limine No. 5,) this motion is likely moot.  Nevertheless,

2  the Court finds that Osteotech should not be prohibited from

3  explaining the statements in question to the extent such explanations

4  are based on evidence it has already produced for GenSci.

5

6  **8.       GenSci's Motion in Limine to Exclude Evidence of Osteotech's
           Exceptional Case Theory (GenSci's Motion in Limine No. 8)**

7       The motion is VACATED, with leave to refile after the liability

8  phase.

9       GenSci seeks an order precluding Osteotech from referencing or

10 introducing evidence regarding GenSci's dismissed infringement claims,

11 as well as other evidence Osteotech seeks to introduce in support of

12 its exceptional case theory.

13      This case will be tried in phases, and the exceptional case

14 portion will be tried after the liability phase of the trial. It is

15 not anticipated that evidence regarding Osteotech's exceptional case

16 theory will be relevant to the liability phase. However, if a party

17 believes such evidence is relevant during the liability phase, the

18 Court will consider it at that time. Similarly, the Court will rule on

19 any evidence concerning GenSci's now-dismissed infringement claims if

20 it arises during the liability phase of the trial.

21

22 **9.       GenSci's Motion in Limine to Exclude Testimony of Gordon
           Peterson, Dr. Seth M. Zeidman, and Dr. Walter Sassard**

23 **          (GenSci's Motion in Limine No. 9)**

24      The motion is DENIED with respect to all witnesses except for Dr.

25 Walter Sassard.  GenSci seeks to exclude the testimony of Mr. Gordon

26 Peterson, Dr. Seth Zeidman, and Dr. Walter Sassard because Osteotech

27 failed to produce expert reports for them and allegedly failed to

28

1 promptly disclose their identities pursuant to Local Rule 6.2.1 and

2 Federal Rule 26.

3    There is no dispute over the fact that none of the above

4 witnesses submitted expert reports and therefore none should be

5 permitted to testify as experts at trial. See Fed. R. Civ. P.

6 26(a)(2)(B) (requiring the disclosure of reports for expert

7 witnesses). Nevertheless, GenSci is concerned that Osteotech will

8 ultimately attempt to present expert opinions through these witnesses

9 by taking advantage of the often vaguely-interpreted boundary between

10 expert and lay opinion. Non-experts can testify as to opinions and

11 inferences that are rationally based on their perception and helpful

12 to a clear understanding of testimony or factual issues, but are not

13 permitted to testify as to opinions or inferences based on scientific,

14 technical, or other specialized knowledge. See Fed. R. Evid. 701. In

15 its opposition to this motion, Osteotech states that none of the non-

16 expert witnesses challenged here will be offering any opinion

17 testimony at trial. Instead, they will each be fact witnesses who

18 testify as to their own personal knowledge. See Fed. R. Evid. 602.

19 The Court will hold Osteotech to this representation. Thus, the

20 content of their proposed testimony is not a basis for their

21 exclusion.

22    GenSci also argues that all three witnesses should be excluded

23 because they were allegedly identified too late, and that this

24 tardiness is allegedly prejudicial. Mr. Peterson and Dr. Zeidman were

25 both identified on June 15, 2000, the final day of discovery and more

26 than a year before trial is now scheduled to begin. GenSci simply is

27 not prejudiced by the date of these disclosures. Conversely, Dr.

28 Sassard was identified by Osteotech for the first time on August 24,

32

1  2001.  Osteotech offers no explanation for this eleventh-hour

2  disclosure.  Like Mr. Borden, see supra, Section I, Part 7 (ruling on

3  Osteotech's Motion in Limine No. 7), Dr. Sassard should be excluded

4  because there appears to be no excuse for his tardy identification

5  and, among other things, the late disclosure significantly and

6  unfairly prejudices GenSci because of its proximity to the trial date.

7

8  10.      **GenSci's Motion in Limine to Exclude Late Produced Documents
           and Things and Never Produced Samples (GenSci's Motion in
9          Limine No. 10)**

10      The motion is DENIED.  GenSci seeks to persuade the Court to

11  exclude documents relating to the Thomas Alva Edison Patent Award

12  ("Award Documents"), documents collected by Osteotech's expert Bernard

13  Kanner "as a result of" certain rebuttal reports by GenSci's experts

14  ("Kanner Documents"), and various sample compositions disclosed by

15  Osteotech.  At the October 1, 2001 hearing on all pending motions in

16  limine, GenSci withdrew its objection to the admission of the sample

17  compositions and documents (Exhibits 534-541, and 844-848).  Thus,

18  only the award documents and the Kanner documents remain at issue.

19      a.  **Award Documents**

20      GenSci argues that Osteotech's failure to disclose the Award

21  documents (Exhibits 645-650) prior to August 16, 2000 constitutes a

22  violation of its duty to supplement its initial disclosures under

23  Federal Rule of Civil Procedure 26(e)(1) and Local Rule 6.2.2.

24  However, GenSci admits that it knew about the award, and therefore

25  presumably also about the award documents, in April of 2000.  Thus,

26  GenSci was apprised of the documents in question, at the latest, more

27  than two months before discovery concluded on June 15, 2000, and well

28  over a year before trial is now scheduled to begin.  Rule 26 only

33

requires disclosures "at appropriate intervals" and "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).  The local rules are not inconsistent with Federal Rule 26.  See L.R. 6.2.2 (stating that parties are under a continuing duty to supplement as new information becomes known).  GenSci has not demonstrated that Osteotech was aware of the documents in question long before April 2000, such that the interval between the time Osteotech became aware of the documents and the time GenSci became aware of the documents was "inappropriate."

        **b.   Kanner Documents**

GenSci maintains that Osteotech's failure to disclose Exhibits 245, 370, 388, and 458 prior to the conclusion of discovery on June 15, 2000 violates the Court's scheduling order and unfairly prejudices GenSci.  Osteotech notes that all of the documents in question were disclosed on August 16, 2000, and argues that this was either soon after it became aware of them, or soon after it discovered that they would be relevant.  Osteotech claims that it first learned about most of the documents, or realized they would be relevant, between May 4, 2000 and May 31, 2000.  Under the circumstances of this case, disclosure in August was not untimely.


**11.     GenSci's Motion in Limine to Exclude Certain Testimony of Osteotech's Patent Law Expert (Motion in Limine No. 11)**

     This motion is GRANTED. The Court will not accept testimony from Mr. Martens or any other patent law expert in this litigation. As was discussed at the hearing on this motion, the Court and counsel for the

1 | parties will be sufficient to educate the jury about patent law and

2 | practice.

3

4 | 12.      GenSci's Motion in Limine to Exclude Certain Testimony and
   |         Exhibits of Osteotech's Technical Experts (GenSci's Motion
   |         in Limine No. 12)

5

6 | The motion is GRANTED. Osteotech's technical experts may not

7 | testify about legal opinions, nor is the DePuy Settlement Agreement

8 | admissible. The claim charts attached to the Osteotech expert reports,

9 | however, are admissible.

10 | GenSci seeks to preclude Osteotech's technical experts from

11 | testifying about legal issues. Osteotech's technical experts may not

12 | testify about legal issues, but rather must confine their testimony to

13 | their technical areas of expertise. With regard to specific matters,

14 | the Court will take those up as they arise at trial. In any event,

15 | expert testimony may include the background of the technology at issue

16 | and how the patents would be understood by those with ordinary skill

17 | in the art.

18 | GenSci also seeks to preclude certain statements from the DePuy

19 | Settlement Agreement, and the Court agrees. The DePuy Agreement

20 | discusses characteristics of the DynaGraft products, and Osteotech's

21 | experts apparently intend to rely on the Agreement for support that

22 | those descriptions apply to the DynaGraft products. The DePuy

23 | Settlement Agreement is hearsay in this regard. Unless the experts can

24 | demonstrate that the agreement is the type of document on which

25 | experts would reasonably rely with regard to these points, it is not

26 | admissible.

27 | At least one expert reportedly intends to rely on the fact that

28 | DePuy settled as evidence that DynaGraft infringes. Admitting this

1   would be confusing to the jury and unduly prejudicial. Companies have

2   reasons to settle other than that a particular product in fact

3   infringes. Admitting the Agreement for this purpose would be highly

4   prejudicial and irrelevant.

5       The tables attached to Osteotech's expert report are admissible.

6   An expert may rely on hearsay in forming an opinion, as long as it is

7   the type of information reasonably relied on by such an expert. See

8   Fed. R. Evid. 703. Moreover, an expert may present his or her

9   conclusions in the form of a chart that summarizes evidence or the

10  expert's opinions.

11
12  **13.     GenSci's Motion in Limine to Exclude Testimony That GenSci
            Regeneration Sciences, Inc. is Liable (GenSci's Motion in
            Limine No. 13)**
13

14      This motion is GRANTED as to evidence of inducement and piercing.

15  However, the Court finds that Osteotech still has viable claims

16  regarding direct infringement against GenSci Regeneration Sciences

17  ("Sciences"), and that Osteotech's Third Party Complaint, while

18  improperly styled, was nevertheless proper.

19      GenSci argues that Osteotech's Third Party Complaint is

20  procedurally and substantively deficient because it represents an

21  improper impleader under Fed. R. Civ. P. 14(a). The Court agrees that

22  impleader is not an appropriate way to style the document, because

23  Osteotech did not allege, and it is not the case, that Sciences is

24  derivatively liable. However, the procedural history of this case, and

25  not Osteotech's legal characterizations, should control the Court's

26  interpretation of the document.

27      This action began with two cases, one of which Osteotech filed in

28  the District of New Jersey against both GenSci OrthoBiologics and

Sciences. The other action was filed in the Central District of California by GenSci OrthoBiologics, against Osteotech, seeking declaratory judgment that it did not infringe the '558 patent, as well as relief with regard to GenSci's own patents. On May 4, 1998, the New Jersey court ordered the case transferred to the Central District. It rested its decision on the fact that there was no personal jurisdiction over Sciences, and that justice would be better served by transfer "rather than by dismissing defendant [Sciences] and allowing this suit to proceed in its absence" See Osteotech, Inc. v. GenSci Regeneration Sciences, Inc., 5 F. Supp. 2d 349 (D.N.J. 1998).

In August, 1998, this Court ordered both cases consolidated. The Order provides that all prior filings in both cases are deemed filed in this case. Osteotech never dismissed its claim against Sciences in the New Jersey case, and in fact that case was transferred to this Court for the express purpose of allowing Sciences to remain in the case. Therefore, Sciences is a defendant, and not a third-party defendant. Osteotech's so-called third party complaint was, if anything more than mere surplusage, an amendment to its New Jersey complaint, which was expressly incorporated into this case by virtue of this Court's August Order. The Court therefore construes Osteotech's Third Party Complaint as an amendment to its original complaint against Sciences in this case.

Osteotech has alleged that Sciences directly infringes its products by making, using or selling the patented invention. In its August 29, 2000 Proposed Stipulation of Fact, GenSci admitted that

Declaratory judgment Plaintiff, GenSci OrthoBiologics, Inc. and Counterdefendant GenSci Regeneration Sciences Inc., its parent (hereinafter collectively "GenSci"), manufactures and distributes DynaGraft Gel and DynaGraft Putty...

1    GenSci attempts to get around this admission by stating that the
2    joint reference to GenSci was nothing more than a convenient way to
3    refer to both parties. That may be true, but in this case the joint
4    reference provided a convenient way to admit that both defendants
5    make, use or sell the DynaGraft products. GenSci asserts that evidence
6    attached to the Grant Declaration establishes that Sciences does not
7    make, use or sell the products. The Court is not aware of the evidence
8    GenSci refers to. Moreover, such evidence would not necessarily be
9    sufficient to overcome the weight of GenSci's prior stipulation, nor
10   the prior history of this case. Because Sciences has always properly
11   been a defendant in this case, and because direct infringement has
12   always been alleged against it, Sciences remains a defendant on that
13   ground.

14   Evidence regarding Sciences' alleged inducement may not be
15   presented in this case.[6] Similarly, Osteotech never alleged a piercing
16   theory in its complaint and for the same reasons may not now assert
17   this claim against Sciences either.

18

19   **14.    GenSci's Motion in Limine to Exclude Evidence that Questions**
20   **the Osteogenic Activity of the DynaGraft Products (GenSci's**
     **Motion in Limine No. 14)**

21   The motion is DENIED because it is now moot.  GenSci seeks to
22   prevent Osteotech from presenting evidence at trial that questions
23   whether GenSci products are "osteogenic" or contain "new bone growth
24   inducing amounts of demineralized osteogenic bone powder." It also
25   seeks to prevent Osteotech from informing the jury that GenSci

26

27   _____

28        [6] For a more detailed discussion, see infra Section II, Part 15 (disposing of
     GenSci's October 1 Motion in Limine to Preclude Osteotech from Offering Evidence of
     Inducement to Infringe the Patents in Suit).

1   attempted to withdraw or amend its admissions regarding these
2   characteristics of GenSci products.

3        GenSci first identified and communicated to Osteotech its
4   concerns regarding the evidence at issue via the filing of this motion
5   in limine.  Such behavior constitutes a clear violation of Local Rule
6   9.4.7, which states that "[t]he parties shall attempt to resolve any
7   objections to the admission of oral and documentary evidence."
8   Osteotech points out that, had GenSci raised the issue with Osteotech
9   before filing the motion, it would have learned that Osteotech does
10  not intend to offer such evidence at trial unless GenSci first "opens
11  the door," and except to the extent necessary to establish that the
12  case is exceptional under 35 U.S.C. § 285. GenSci claims that it will
13  not open the proverbial door at trial, but concedes that the evidence
14  may be relevant to Osteotech's exceptional case theory.  The Court
15  will hold the parties to these representations.  Thus, the parties
16  agree that evidence questioning whether GenSci products are
17  "osteogenic" or "contain new bone growth inducing amounts of
18  demineralized osteogenic bone powder," and evidence regarding GenSci's
19  attempt to withdraw or amend its admissions regarding these
20  characteristics of GenSci products will not be placed before the jury.
21  Since the Court will determine whether the case is exceptional, see 35
22  U.S.C. § 285, the evidence may be admissible at a later stage of the
23  proceedings.

24  **15.     GenSci's Motion in Limine to Preclude Osteotech from
25           Offering Evidence of Inducement to Infringe the Patents in
         Suit**

26       The motion is GRANTED.  Inducement and direct infringement are
27  different claims, and each must be pleaded separately. In its Third

1   Party Complaint, filed on Sept 10, 1998, Osteotech alleged that GenSci

2   infringed under Section 271 "by making, using, and/or selling" the

3   invention. Although Section 271 does include inducement, the

4   additional 'making, using, and/or selling' language speaks

5   specifically to direct infringement. Moreover, although Osteotech

6   reserved the right to add additional claims "based on discovery" it

7   never did so. Osteotech states that including inducement among its

8   responses to OrthoBiologics's interrogatories in July, 1999 was

9   sufficient to incorporate an inducement claim against Sciences into

10  this case. It was not. A claim against OrthoBiologics is not a claim

11  against Sciences.

12        Moreover, a party must obtain leave of court before amending a

13  claim in this manner, and Osteotech has never requested such leave. If

14  Osteotech were to request such leave now, it would be denied. Allowing

15  Osteotech to present a new inducement theory at this stage does not

16  subserve the merits of this litigation. Rather, such an abrupt change

17  in theory on the eve of trial is highly prejudicial to Sciences, which

18  until now had every reason to believe that Osteotech was pressing only

19  a direct infringement case against it.   Inducement was not pleaded in

20  this case, and GenSci therefore had no notice or opportunity to

21  prepare for inducement claims.

22

23        **III. OSTEOTECH'S MOTION FOR SUMMARY JUDGMENT**

24

25  1.        **GenSci's Objection under Local Rule 7.4.2 to Osteotech's**
            **Renewed Motion for Summary Judgment That the Doctrine of**
            **Equivalents Does Not Apply**

26

27        The Court finds that Osteotech did, as GenSci alleges, violate

28  Local Rule 7.4.2 by filing its motion in an untimely fashion. The

40

1   Court is disappointed that both parties appear to have difficulty

2   complying with the clear deadlines set by the Local Rules. However,

3   the Court does not believe that this particular instance warrants

4   sanctions.

5

6   **2.      Osteotech's Renewed Motion for Summary Judgment That the Reverse Doctrine of Equivalents Does Not Apply**

7       This motion is DENIED. The Court finds that there are disputed

8   issues of fact, especially regarding the principle of the invention,

9   which require resolution at trial.

10      GenSci did not expressly plead the reverse doctrine, but it is

11  included in a defense of noninfringement. There is therefore no

12  violation of Fed. R. Civ. P. 8(c).

13      In its motion, Osteotech does not appear to be arguing the

14  application of the doctrine, but rather the merits of the defense. Of

15  course, if the requirements for the application of the doctrine are

16  not satisfied as a matter of law, the Court will not permit any issue

17  concerning the doctrine to be submitted to the jury. Otherwise, the

18  applicability of the doctrine involves questions of fact which must be

19  reserved for the jury. See, e.g., Hartness Intl. V. Simplimatic Eng'g

20  Co., 819 F.2d 1100, (Fed. Cir. 1987) (stating that both the doctrine

21  of equivalents and the reverse doctrine are questions of fact). Here,

22  it appears that a prima facie case for the application of the reverse

23  doctrine has been made.

24      Osteotech states that cases holding that the reverse doctrine

25  does not apply are "legion." However, these were cases where courts

26  decided, as a matter of law, that the reverse doctrine was not

27  satisfied because it was already established that the accused products

28  operated on the same principle as the patents in suit. In this case,

41

1  the principle of the invention is in dispute and summary judgment is

2  therefore not appropriate.

3      Osteotech argues that viscosity of the product at the bone defect

4  site does not relate to the principle of the invention. GenSci

5  disagrees, arguing that the reverse phase thermal properties of its

6  carrier are sufficiently different to bring its product outside the

7  equitable scope of the claims. What the principle is, and whether the

8  accused product falls within it, are jury questions. Osteotech may

9  have a meritorious argument that GenSci's product is not so far

10  changed in principle that the reverse doctrine should apply. However

11  this issue must await resolution at trial.

12

**IV. GENSCI'S MOTION TO DECLASSIFY DOCUMENTS DESIGNATED "CONFIDENTIAL-**
13  **OUTSIDE COUNSEL ONLY" UNDER THE PROTECTIVE ORDER REGARDING**
    **CONFIDENTIAL INFORMATION ENTERED ON MARCH 13, 2000**
14

15      The motion is DENIED because it is now moot.  GenSci seeks an

16  order from the Court directing both parties to review the pleadings

17  and other documents that have been filed with the Court and to

18  declassify such documents except to the extent that the documents are

19  reasonably believed to contain certain types of confidential

20  information.  Having been resolved by the parties on the record at the

21  October 1, 2001 hearing, the motion is now moot.

22

23  DATED: _October 17, 2001_        _Mariana R. Pfaelzer_

24                                   Honorable Mariana R. Pfaelzer
                                     United States District Judge
25

26

27

28

42